ROBERTA RAE GUMM
1492 CHENA POINT AVE
FAIRBANKS, ALASKA 99709
907-451-6367

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

**ROBERTA RAE GUMM**
**PLAINTIFF**

VS.

**FEDERAL BUREAU OF PRISONS,**
**FEDERAL TRANSFER CENTER IN**
**OKLAHOMA CITY, OK,**
**OFFICER JONES,**
**PA MEIR,**
**DR. GOFORTH,**
**DR. WILES,**
**OFFICER ZIMMERMAN,**
**AND OTHER UNKNOWN FEDERAL**
**OFFICERS,**
**FEDERAL CORRECTIONAL CENTER**
**IN DUBLIN, CALIFORNIA,**
**DR. BASILE,**
**DR. EZAZ,**
**DR. PANG,**
**DR. JUPINA**
**AND OTHER UNKNOWN FEDERAL**
**OFFICERS**
**NORTHSTAR CENTER OF**
**ESTER, ALASKA,**
**DIRECTOR RODRIQUEZ**
**IN THEIR OFFICIAL AND**
**UNOFFICIAL CAPACITY**

F06-0014 CIV

## COMPLAINT

**COMES NOW, Roberta Rae Gumm and for her complaint states:**

### STATEMENT OF JURISDICTION

**That the actions or inactions** of the Defendants giving rise to this action occurred in several different jurisdictions that the incident giving rise to this action occurred at the Federal Transfer Center (FTC), in Oklahoma City, Oklahoma. That the Plaintiff is a resident of Alaska and the Plaintiff invokes jurisdiction pursuant to 28 USC § 1332(a)(1). Venue is proper in this case pursuant to 28 USC §1391(e) (3).

### CAUSE OF ACTION

1.) That Plaintiff was sentenced on or about February 14, 2005 to a term of incarceration of twenty-four (24) months in the Western District of Missouri; that plaintiff is seeking jury trial, and or for her complaint.

2.) That on or about April 06, 2005, Plaintiff, a federal prisoner, was transferred, by the United States Bureau of Prisons, to the Federal Transfer Center (FTC), in Oklahoma City, Oklahoma, to wait being transported to her designated institution.

3.) That on or about April 09, 2005 while detained at FTC, Plaintiff stepped into liquid spilled on the floor at FTC; that **PLAINTIFF SUFFERED SEVERE INJURY TO HER LEFT ANKLE** when she slipped and fell on the spilled liquid on the floor; that said injuries ultimately required surgery to repair; that Plaintiff has suffered permanent injury to her person as a result of this fall; that Plaintiff was denied proper and

timely medical care and treatment in connection with her injuries; that Plaintiff's Eighth Amendment Right to be **FREE FROM CRUEL AND UNUSUAL PUNISHMENT** was violated when she was not provided timely medical care and treatment for her injuries causing her to suffer great and undue physical, emotional and mental pain and suffering; that Defendants Jones, Meir, Goforth, Wiles, Zimmerman, and other unknown Federal Employees have continued to willfully violate Plaintiff's Eighth Amendment Right by refusing to accord her proper medical care, treatment, follow-up care, physical therapy as ordered by Plaintiff's physician in Oklahoma City, Oklahoma.

4.) That, Defendants Basile, Ezaz, Pang, and Jupina as well as Defendants Jones, Meir, Goforth, Wiles and other unknown Federal Employees actions/inactions were deliberate, knowing and intentional and were ultimately a willful breach of their official duties, respectfully. The incident giving rise to this action occurred on the property of the Defendant United States.

5.) That on April 09, 2005 Plaintiff fell on the wet floor at FTC; that no precautions were taken by Defendant Jones to prevent inmates in his care and custody at FTC from falling on the wet floor; that OSHA requires wet floor indicators be placed around and/or near the wet floor to warn of the wet surface surface to avoid fall and/or injury; that Defendant Jones gave no verbal warning of the hazard associated with the wet floor, and made no attempts to clean up or have the wet surface cleaned up or dried.

6.) That several minutes after Plaintiff fell on the wet floor, Defendant Jones approached Plaintiff and attempted to force Plaintiff to stand on her foot, which had received multiple fractures as a result of the fall and as a direct result of Defendant Jones' negligence and breach of his duties; that other inmates in fact advised Defendant Jones

That he needed to contact medical personnel, as she was in fact seriously injured, as a direct result of his negligence, which in fact resulted in Plaintiffs' serious injuries.

7.) That, Defendant Jones did finally request medical personnel, after other inmates did tell him she was seriously injured, and that she needed medical attention; and when they arrived Plaintiff was then placed on a stretcher and taken to an examination room.

8.) That Defendant Mier made a visual inspection of Plaintiff's injured foot and ankle and misdiagnosed the injury as "Tendonitis".

9.) That Defendant Meir improperly placed a malfitting splint on Plaintiff's foot and ankle increasing her pain and causing further injury and damage.

10.) That, Defendant Mier prescribed Plaintiff continue taking Ibuprofen for any pain, which Plaintiff was already taking for Plaintiff's arthritis, and ordered that Plaintiff be provided with a wheelchair; that this injury was extremely painful to Plaintiff and she was denied any pain medication sufficient to relieve her pain; that the inappropriate placement of the splint on Plaintiff's foot and ankle increased her pain and caused further injury to Plaintiff.

11.) That, on or about April 11, 2005, still suffering extreme pain, Plaintiff requested to see medical staff; that Plaintiff was approached by an unknown Physicians' Assistant (PA), who refused to address Plaintiff's concern regarding her injuries and her pain; that later on the evening of April 11, 2005, (two (2) days after Plaintiff had sustained her injuries), medical staff at FTC decided to x-ray Plaintiff's foot and ankle.

12.) That on the afternoon of April 12, 2005, Defendant Dr. Wiles came to advise Plaintiff of the results reflected in the x-rays from the night before; that Defendant Dr.

Wiles advised Plaintiff that she had "broken all the bones in her ankle" (Trimalleor Fracture) when she fell on the wet floor; that Defendant Dr. Wiles stated that the Plaintiff's injuries required surgery and that said surgery should have been performed within the first six (6) hours after Plaintiff sustained the injury to properly prepare and to enable her ankle and foot to properly to properly heal; that Defendant Dr. Wiles then took her to an examination room, removed the malfitting splint, administered two (2) shots to relieve her severe pain which Plaintiff had unnecessarily suffered as a result of the negligence and delay in proper medical care by Defendants Jones, Mier, and other unknown federal employees, that thereafter Defendant Dr. Wiles placed the proper splint on her and prepared her for transport to St. Anthony's Hospital.

13.) That Plaintiff was finally transferred to St. Anthony's Hospital in Oklahoma City, Oklahoma nearly four (4) days after she sustained the severe injury to her ankle and foot, by Defendant Zimmerman and other unknown federal employees, whom tried to cause more undue and unnecessary pain by attempting to place ankle restraints on Plaintiff and having her climb into a van not equipped to transport handicapped or injured persons. That Defendants' neglect of their official duties delayed Plaintiff in receiving proper transfer, treatment, and medical care for her injuries in violation of her Eighth Amendment Right.

14.) That due to the lack of proper medical care, treatment, and transporting Plaintiff received from Defendant's United States, Jones, Mier, Dr. Wiles, Dr. Goforth, Zimmerman, and other unknown federal employees, officers and medical staff at the FTC, physicians at St. Anthony's Hospital in Oklahoma City, Oklahoma were unable to perform the necessary surgery right away due to the excessive swelling which resulted

from the improper medical care and or treatment or lack of proper medical care and treatment by Defendant's at FTC.

15.) That, Justine Crowley, D.O., the attending physician at St. Anthony's Hospital, ordered that Plaintiff receive Oxycotin for pain, elevation of her leg, and application of cold compresses to relieve swelling; that in addition to the Oxycotin that Plaintiff was administered for her unnecessary and extreme pain, Plaintiff was placed on Morphine and Percocet, to be alternated every two (2) hours.

16.) That due to the lack of proper medical care and treatment Plaintiff received from Defendants, United States, Jones, Mier, Dr. Wiles, Dr. Goforth, Zimmerman and other unknown federal employees, physicians at St. Anthony's Hospital were unable to immediately perform the necessary surgery to repair the Plaintiffs' injuries.

17.) That on or about April 14, 2005, at about 4:00 P.M., Plaintiff finally underwent the required surgery for her injuries which she had sustained at FTC five (5) days earlier; that during the surgery various metal fixation appliances had to be placed in and on the bones of Plaintiff's ankle and foot in an effort to repair the severe injuries sustained during the fall on the wet floor at FTC; that this surgery was performed by John B. Hughes, D.O., of Oklahoma City, Oklahoma.

18.) That Plaintiff suffered from complications from her injuries and subsequent surgery; that on April 15, 2005, Plaintiff was diagnosed with Pneumonia and Hypoxemia; that Plaintiff was then placed on oxygen and antibiotics were prescribed due to these complications.

19.) That Plaintiff was the moved to another floor at the hospital, and remained under treatment, and on oxygen and antibiotics for a consecutive five (5) days, that

Plaintiff was subjected to because of the delay and negligence of the proper medical care and treatment from the Defendants, United States, Jones, Mier, Dr. Wiles, Dr. Goforth, Zimmerman, and other unknown federal officials.

20.) That Plaintiff on or about April 27, 2005, was transported from FTC to the office of John B. Hughes, D.O. in Oklahoma City, Oklahoma; that Plaintiff's foot and ankle was then placed in a cast, that Plaintiff was ordered that she be returned to his office in 2-3 weeks for follow-up care and removal of the cast and staples, (18 that were left in Plaintiff's leg under her cast).

21.) That on or about April 28, 2005, Defendants willfully caused additional pain, trauma and injury to Plaintiff when (while she was still under the care and treatment of Dr. Hughes in Oklahoma City, Oklahoma) unknown federal employees at FTC forced plaintiff to put weight on her injured foot and when they attempted to place her on an airplane to transfer her to the Federal Correctional Institution Dublin, in Dublin, California; that Plaintiff had been ordered by her physician not to put force or weight on her foot or ankle until further evaluation and orders from her physician; that federal officials, Defendants' Dr. Goforth, Dr. Wiles, Zimmerman, were all aware of these orders from Plaintiff's physician; that Dr. Hughes, D.O.
Had ordered that Plaintiff be returned to his office within 2-3 weeks for follow-up care; that unknown federal officials at FTC willfully caused Plaintiff to be subjected to additional pain, suffering and injury when they refused when they knowingly refused to comply with Dr. Hughes' orders for the care and treatment of Plaintiff.

22.) That in preparing Plaintiff to be placed on an airplane for transfer to FCI Dublin, Dublin, California, on or about April 28, 2005, unknown federal officials at FTC

forced Plaintiff to bear weight and force on her foot and ankle during a strip search of her person; that Plaintiff was forced to pull her pants down and off, as well as up and over her casted foot and ankle, bearing additional weight and force, causing additional and unnecessary pain, on her injured ankle and foot.

23.) That Dr. Hughes in Oklahoma City, Oklahoma, on April 27, 2005, had in fact ordered unknown federal officials, Dr. Wiles, and Dr. Goforth as well as the medical staff at FTC to bring Plaintiff to his office within 2-3 weeks for follow-up care, treatment, and removal of the cast and staples; that Plaintiff was still under the care of Dr. Hughes and had not been released to be transported by unknown federal officials, as well as endangering her further and causing her to possibly lose her left foot due to the danger of transporting her by air with staples in her person and a fresh cast on her ankle and leg; that unknown federal officials, Defendants Dr. Wiles, Dr. Goforth, and medical staff willfully disregarded the instructions and orders of Dr. Hughes, a licensed qualified orthopedic surgeon and physician in Oklahoma City, Oklahoma and deliberately caused additional pain and injury to Plaintiff by the use of excessive force, negligence, breach of duties which were as result of vindictiveness and malice.

24.) That during the final pat and visual search of Plaintiff before boarding the aircraft, during which the Plaintiff again was forced to bear weight and force on her injured foot and ankle (contrary to the directives and orders of her physician, Dr. Hughes), that the U.S. Marshall Medical Service provider did finally come and questioned her about her injury, the date of her injury, the date the cast was put on her, and whether she was infact still under the care of a local physician; that upon learning that the unknown federal officials were attempting to circumvent and disregard the directives

and orders of Plaintiff's physician in Oklahoma City, Oklahoma issued by him one (1) day earlier, on April 27, 2005; that also she was infact aware of the danger of transporting her by air; she refused to transport the Plaintiff or to take custody of her, and requested the unknown federal officials at FTC to comply with Plaintiff's physicians orders and directives.

25.) That after Dr. Hughes removed Plaintiff's cast on or about May 11, 2005, Plaintiff was transferred on or about May 13, 2005 from FTC in Oklahoma City, Oklahoma to FCI Dublin, in Dublin, California; that Dr. Hughes did not release Plaintiff from his care; that Dr. Hughes directed unknown federal officials to return Plaintiff to his clinic in two (2) weeks; that an appointment was made with Dr. Hughes for Plaintiff's return follow-up visit for further care and treatment, however said unknown officials, and medical staff at FTC caused Plaintiff additional harm, pain and injury by forcing her to stand for extended periods bearing excessive weight and force on her foot and ankle during this medically unauthorized transfer.

26.) That Plaintiff's physicians directives were not followed had caused Plaintiff forced trauma, pain, and further injury; that Plaintiff was denied further treatment from her physician, then forced to bear weight against his directives; that Plaintiff was then forced, upon her arrival to FCI Dublin at Dublin, California, to leave the aircraft, by unknown federal officials, and go down the ramp without any aid, only the use of the hand rails; that Plaintiff was then forced to endure more extreme pain, harm, and injury to her foot and ankle by unknown federal officials when she was forced to crawl onto as well as off of the bus that transported Plaintiff to the FCI Dublin from the airport.

27.) That Plaintiff was then forced to walk on crutches, which she was not

accustomed to, for approximately ¼ of a mile to the receiving and discharge (R&D) area at FCI Dublin, in Dublin, California; causing Plaintiff more extreme pain, injury and harm to her foot and ankle; that Plaintiff was then forced to continue standing for several hours while Plaintiff was being processed in with several other inmates; that Plaintiff's condition was not acknowledged even when medical staff had been made aware of her recent surgery, and medical issues.

28.) That Plaintiff was then seen by Sharon D. Tiernan-Lang, PA-C of the FCI Dublin medical staff for intake whom told her she was to use the crutches, and that the injury was one (1) month old therefore it was an old injury; that Plaintiff's physician, Dr. Hughes, own directives were ignored, that Plaintiff suffered extreme pain, trauma, and injury to her foot and ankle.

29.) That Plaintiff was not seen by a Medical Doctor, Dr. Pang, at FCI Dublin, until June 10, 2005, almost one (1) month after her arrival at FCI Dublin and only after Plaintiff approached him at main line to ask when he would be seeing her. That Plaintiff was then told he was aware of her injuries and did not know why he had not seen her.

30.) That Plaintiff did see the Orthopedic doctor, Dr. Jupina, on May 18, 2005, but had to reschedule the visit, as FCI Dublin could not find Plaintiff's x-rays, and had to have more taken; that Plaintiff was advised to keep ankle elevated and use ice packs due to the severe swelling caused by improper medical attention, causing Plaintiff extreme pain, trauma, and injury to her foot and ankle.

31.) That Plaintiff was again seen by FCI Dublin's, orthopedic physician, Dr. Jupina, whom highly recommended removal of all the hardware; that Plaintiff was refused this surgery by Defendants', Dr. Ezaz, Dr. Basile, and Dr. Pang; that Plaintiff

would have to have it removed on her own, as it takes nine (9) to twelve (12) months for her original injury to heal; that Plaintiff was to quit using her crutches; that plaintiff was to report to the kitchen duty where Plaintiff would be at further risk of injury, pain, severe emotional stress, as well as trauma.

32.) That Plaintiff was treated with malicious, vindictive rage from Dr. Ezaz, whom in fact tried to have her placed in the "Shu" (Special Housing Unit), when Plaintiff refused to take her protective boot off, due to the fact that she still needed protection on her foot and ankle to prevent any further injury, pain or suffering; as Plaintiff was never issued any footwear as they could not find anything to go on her foot, due to the injury she had sustained at FTC Oklahoma.

33.) That Plaintiff was accused of "feeling she shouldn't have to work" when she was called into Dr. Basiles' office after Plaintiff started her administrative remedies over lack of proper medical care, removal of protective boot, improper footwear for injured left foot and ankle, and placing her in harms way by placing her in the kitchen for duty; that Defendant could not tell, nor was she able to know how the Plaintiff felt.

34.) That Plaintiffs' pain and suffering was compounded by placing her in the kitchen due to the emotional stress, pain and injury caused her, and the fear of a slip and fall while on duty.

35.) That Plaintiff, was released, on or about April 04, 2006, and sent to Northstar Center at Ester, Alaska, for a 60 day ½-way house, which infact housed Fairbanks Correctional Center inmates, where the Director, Ms. Rodriquez, vindictively and maliciously, denied Plaintiff her driving privileges, as per their own handbook, which caused her more injury, pain, and suffering; that Plaintiff was further housed in a room

away from the female population, and left mostly in segregation, with little or no outdoor recreation. That Plaintiff was forced to obtain immediate employment and was prevented from obtaining proper medical care.

36.) That Plaintiff suffered extreme swelling, pain, and suffering from climbing in and out of the van that transported her to her employment, then walking approximately ¼ mile each way from the drop-off, and waiting up to as long as 45 minutes, with nowhere to sit or to put her foot or ankle up, while waiting for the van to pick her up after her work day.

37.) That Plaintiff has been denied any follow-up care, treatment or physical therapy by a licensed, qualified physician and/or physical therapist as ordered by Dr. Hughes in Oklahoma City, Ok. As well as the Orthopedic Surgeon, Dr. Jupina.

38.) That Plaintiff has suffered major scarring in connection with her injury and subsequent surgery.

39.) That Plaintiff's **Eighth Amendment Right** has been **willfully** violated by the federal Defendants named herein; that said Defendants **willfully** breached their official duties and **do not** have qualified immunity in this matter.

40.) That as a result of the breach of official duties by the federal Defendants, Plaintiff has suffered **permanent** physical damage to her person, as well as **permanent** mental and emotional damage and trauma.

41.) That Plaintiff was finally released from custody on June 05, 2006, but is financially unable to obtain proper medical care and treatment for her injury which she sustained at FTC Oklahoma on April 04, 2005.

42.) That Plaintiff will be forced to incur medical expenses in relation to her

injury sustained as a result of **Defendant's breach of duties, negligence and willful vindictive actions** against her; that Defendants should be financially liable for payment on April 09, 2005, while detained at FTC Oklahoma.

43.) That Plaintiff has exhausted her administrative remedies with the United States Bureau of Prisons and under the Federal Tort Claim Act, all of which have been denied.

**Wherefore,** Plaintiff prays for judgement against Defendants in their official and individual capacities for damages, injuries and all expenses described herein in the amount of $15,000,000.00; that Plaintiff prays for judgement against Defendants for her costs, fees and expenses in this matter and for all other just and equitable releif to which she may be entitled.

Respectfully Submitted,

*Roberta Rae Gumm*
Roberta Rae Gumm