IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERTA RAE GUMM,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>NORTH STAR CENTER,<br>et al.,<br><br>　　　　　Defendants. | Case No. 4:06-cv-00014-RRB<br><br>ORDER OF DISMISSAL |

　　　Roberta Rae Gumm, representing herself, has filed an amended civil rights complaint, complaining of conditions at her halfway house in Fairbanks, Alaska.[1] Under the Prison Litigation Reform Act, the Court must screen Ms. Gumm's complaint, and must dismiss if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[2]

---

　　　[1] *See* Docket No. 5.

　　　[2] 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1) (screening prisoner civil rights actions); *Minetti v. Port*

As a federal court, this Court is a court of limited, as opposed to general, jurisdiction; it has authority to hear only specified classes of cases. It is Ms. Gumm's burden, as the plaintiff, to show that this Court has jurisdiction to hear the claims.[3] "To sustain a claim under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right."[4] As explained by the United States Supreme Court, Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred."[5]

Ms. Gumm is cautioned that she is required to fully exhaust her administrative remedies **before** filing a civil rights lawsuit in federal court.[6] This is so that the halfway house officials have a chance to address, and perhaps resolve, a dispute

---

*of Seattle*, 152 F.3d 1113, 1115 (9th Cir.1998) (quoting *Tripati v. First Nat'l Bank & Trust*, 821 F.2d 1368, 1369 (9th Cir. 1987) (deny leave to proceed IFP "at the outset if it appears from the face of the proposed complaint that the action is frivolous or without merit").

[3] *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Hunter v. Kalt*, 66 F.3d 1002, 1005 (9th Cir. 1995).

[4] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (citations omitted).

[5] *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).

[6] *See, e.g., Witzke v. Femal*, 376 F.3d 744 (7th Cir. 2004) (halfway house while on probation is a form of imprisonment under the PLRA); *Bradley v. Washington*, 2006 WL 2147606 (D.C. Cir. Aug. 2, 2006); *see also Johnson v. California*, 543 U.S. 499, 528 n. 1 (2005); *Porter v. Nussle*, 534 U.S. 516, 520 (2002) (The "exhaustion requirement applies to all prisoners seeking redress for prison conditions or occurrences.").

before the issue is taken to court.[7]  If this issue were raised by the defendants as an affirmative defense or in a motion to dismiss, and Ms. Gumm did not exhaust her administrative remedies before filing this lawsuit, the case would have to be dismissed.[8]

Leaving the exhaustion issue aside, however, Ms. Gumm has not stated a claim under federal civil rights law.  The United States Supreme Court has explained that the Constitution "does not mandate comfortable prisons."[9]  In fact, prison conditions may be "restrictive and even harsh."[10]  The Eighth Amendment imposes duties on prison officials to "provide humane conditions of refinement;" that is, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'"[11]

---

[7]  See *Woodford v. Ngo*, 126 S.Ct. 2378, 2384 (2006).

[8]  *See Woodford*, 126 S.Ct. at 2382-83 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.  [In fact,] a prisoner must now exhaust administrative remedies even where the relief sought -- monetary damages -- cannot be granted by the administrative process. ... Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983.") (citations omitted); *see also Brown v. Valoff*, 422 F.3d 926, 939 n. 13 (9th Cir. 2005) ("an affirmative defense for failure to exhaust can be raised through an enumerated 12(b) motion.")

[9]  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

[10]  *Id.* at 347.

[11]  *Farmer v. Brennan*, 522 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (allowing the gratuitous beating or rape of one prisoner by another is impermissible under the Eighth Amendment.  *Id.* at 548)).

But in order to state an Eighth Amendment claim, two requirements must be met. "First, the deprivation alleged must be, objectively, 'sufficiently serious.' ... The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. ... In prison condition cases, that state of mind is one of 'deliberate indifference' to inmate health or safety."[12] Deliberate indifference entails something more than mere negligence. The Supreme Court has decided as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. [13]

Ms. Gumm alleges that, because she is the only female federal prisoner currently housed in her halfway house, she is unable to move about as freely as either the state female prisoners or the federal male prisoners, and is in lock-down whenever either group is locked down.[14] In addition, Ms. Gumm alleges that she was wrongfully denied driving privileges, and was forced to spend money on cab fare to get to work.  This Court finds that being unable to move freely about in a halfway house, or being denied driving privileges, are not "sufficiently serious"

---

[12] *Farmer*, 522 U.S. at 834 (citations omitted).

[13] *Farmer*, 522 U.S. at 837.

[14] *See* Docket No. 5 at 2-4.

enough to rise to the level of an Eighth Amendment violation.  Nor do they constitute the "unecessary and wanton infliction of pain."[15]

Likewise, the fact that Ms. Gumm is not allowed to freely associate with the female state prisoners housed in the halfway house,[16] is not a violation of her right to association.[17]  The Constitution only protects "certain kinds of highly personal relationships."[18]  And "[f]reedom of association is among the rights least **compatible with incarceration**. ... Some curtailment of that freedom must be expected in the prison context."[19]

---

[15]  *Compare Hudson v. McMillian*, 503 U.S. 1, 4 (1992) (finding an Eighth Amendment violation when, "McMillian then placed Hudson in handcuffs and shackles, took the prisoner out of his cell, and walked him toward the penitentiary's 'administrative lockdown' area. Hudson testified that, on the way there, McMillian punched Hudson in the mouth, eyes, chest, and stomach while Woods held the inmate in place and kicked and punched him from behind. He further testified that Mezo, the supervisor on duty, watched the beating but merely told the officers 'not to have too much fun.' App. 23.  As a result of this episode, Hudson suffered minor bruises and swelling of his face, mouth, and lip. The blows also loosened Hudson's teeth and cracked his partial dental plate, rendering it unusable for several months.").

[16]  *See* Docket No. 5 at 2-4.

[17]  *See Overton v. Bazaetta*, 539 U.S. 126, 130 (2003) ("The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."); *see also Camarillo v. McCarthy*, 998 F.2d 638 (9th Cir. 1993) (no clearly established right for an HIV-positive inmate to be part of the general prison population).

[18]  *Roberts v. United States Jaycees*, 468 U.S. 618, 619-20 (1984).

[19]  *Overton,* 539 U.S. at 130 (emphasis added).

In the prison context, the Supreme Court has upheld restrictions on visits from family members, which is obviously much more of a "highly personal relationship" than Ms. Gumm has to any inmates housed in her halfway house at any given point in time.[20] Ms. Gumm's alternative would be to remain in a federal penitentiary, rather than to be allowed the limited freedom she has in the halfway house.

**IT IS HEREBY ORDERED:**

1. This action is DISMISSED with prejudice, and this dismissal constitutes a "strike" under 28 U.S.C. § 1915(g).[21]

2. Any outstanding motions are DENIED as moot.

DATED this 28th day of August, 2006, at Anchorage, Alaska.

/s/RALPH R. BEISTLINE
United States District Judge

---

[20] See *Overton v. Bazaetta*, *supra*.

[21] "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).